UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KOUTSOUDAKIS & IAKOVOU
LAW GROUP PLLC,

                          Plaintiff,

          – *against* –

BULENT OSMAN, JOSEPH
AUDDINO, and J. STREICHER, LLC,

                          Defendants.

**OPINION & ORDER**

No. 22-cv-6351 (ER)

RAMOS, D.J.:

Law firm Koutsoudakis & Iakovou Law Group, PLLC ("Koutsoudakis") brings this action against Bulent Osman, and Joseph Auddino, and J. Streicher, LLC ("J. Streicher"; with Osman and Auddino, "Defendants") for breach of contract, breach of the duty of good faith and fair dealing, quantum meruit, action on an account stated, and unjust enrichment.  Doc. 1.  Before the court is Auddino's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  Doc. 18.  For the reasons set forth below, Auddino's motion is GRANTED.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Koutsoudakis is a professional legal service limited liability company duly formed under the laws of New York and doing business in New York.  Doc. 1 ("Compl.") ¶ 5.  J. Streicher is a limited liability company formed under the laws of Delaware.  *Id.* ¶ 8.  Osman is a citizen of the United Kingdom and a managing member of J. Streicher. *Id.* ¶¶ 6, 8.  Osman and J. Streicher retained Auddino, an attorney and resident of Pennsylvania (*Id.* ¶ 7), to "facilitate communication" with Koutsoudakis (Doc. 25 (Auddino Reply) at 4).  Koutsoudakis represented J. Streicher and Osman in *Osman, et al. v. Brown, et al.*, Index No. 155092/2019, a shareholder action in New York state court

("the Shareholder Litigation").  *Id.* ¶¶ 9, 11.  Auddino is not a party to the Shareholder Litigation.  *See* Shareholder Litigation, NYSCEF Doc. No. 42 (Am. Compl.). [1]

The parties entered into a written retainer agreement ("the Agreement") on September 3, 2020, pursuant to which Koutsoudakis agreed to represent Osman and J. Streicher in the Shareholder Litigation.  Compl. ¶ 9.  The Agreement set forth the terms of the representation and attorney's fees in connection with the Shareholder Litigation.  *Id*. Koutsoudakis simultaneously alleges that Auddino signed the Agreement as Osman and J. Streicher's "representative" and solely on their behalf (*id*. ¶ 7), but it also alleges that Koutsoudakis agreed to provide legal services and collectively represent "Defendants" (presumably including Auddino) (*id*. ¶¶ 9–17).  The Agreement itself is explicit that "[t]he firm agrees to represent you solely," and defines "you" as "Bulent Osman, on behalf of yourself in your individual capacity and as authorized member or representative of J. Streicher, LLC."  Doc. 23-2 at 1.  The sole signature line was for J. Streicher, to be signed by Bulent Osman, individually and as an authorized member of J. Streicher.  *Id.* at 3. And, although Auddino signed that line, he specifically wrote out "Joseph Auddino on behalf of Bulent Osman and J. Streicher, LLC."  *Id.*

Throughout Koutsoudakis's representation in the Shareholder Litigation, Auddino communicated with the firm's attorneys, partners, and administrators by email, phone, and DropBox, a file hosting service.  Doc. 24 (Pl.'s Opp.) at 11.  During these conversations, Auddino regularly shared case strategies and opinions on draft pleadings with the law firm's associates and partners.  *Id*.  For example, on July 23 and 24, 2020, Auddino shared documents with Koutsoudakis's managing attorney via DropBox concerning Auddino's case strategy for the Shareholder Litigation.  *Id*.  Additionally, on August 10, 2020, Auddino emailed Koutsoudakis's managing attorney to memorialize a

---

[1] The Court can take judicial notice of filings in the Shareholder Litigation to establish the fact of such of litigation and related findings. *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quoting *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).

conversation from August 6, 2020 in which they had explored bringing criminal charges against the Shareholder Litigation defendants. *Id*. He also communicated with Koutsoudakis' attorneys and administrative staff "regarding billing, terms and conditions, [and] scheduling of meetings and conferences with Defendant Osman and Defendant J. Streicher, LLC." *Id*.

Pursuant to the Agreement, Defendants paid Koutsoudakis a retainer fee, and, once Koutsoudakis exhausted the retainer, it began billing Defendants for its legal services by the hour. *Id.* ¶ 12. Koutsoudakis last emailed Defendants an invoice on February 2, 2022. *Id.* ¶ 40. Koutsoudakis alleges Defendants had "ample opportunity" to scrutinize the invoices but never objected. *Id.* ¶¶ 41, 43. Defendants made partial payments but failed to pay the full amount owed. *Id.* ¶ 15. After Defendants failed to pay their legal bills or communicate with the firm for "several months," Koutsoudakis withdrew its representation in the Shareholder Litigation, upon leave granted by the New York Supreme Court on May 17, 2022. *Id.* ¶¶ 16, 32; *see also* Shareholder Litigation, NYSCEF Doc. No. 116 (Order granting Koutsoudakis leave to withdraw).

Koutsoudakis asserts it is owed $107,531.66 in unpaid legal fees and costs for work performed from September 3, 2020 to May 18, 2022.[2] *Id.* ¶¶ 32, 44. It filed the instant action against Defendants on July 26, 2022 to recover the fees. Doc. 1. Although both J. Streicher and Osman were served in August and October 2022, respectively (Docs. 15, 22), neither has answered or otherwise appeared in the case. Auddino moved to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) on November 18, 2022. Doc. 18.

---

[2] Koutsoudakis alleges it represented Defendants from September 3, 2022 to May *18*, 2022 (Compl. ¶ 32), but the order in the Shareholder Litigation granting Koutsoudakis leave to withdraw as counsel was granted on May 12 and filed on May *17*, 2022 (Shareholder Litigation, NYSCEF Doc. No. 116). The Court therefore construes May 18 to be a typographical error.

Additionally, Koutsoudakis does not explain the discrepancy between its allegations that the final invoice was sent on February 2, 2022 but that it continued to represent Defendants for an additional 3 months until May 18, 2022; it is accordingly unclear whether Koutsoudakis continued to work between February 2 and May 18 and/or whether it billed Defendants for any work during such time.

## II.     LEGAL STANDARDS

### A.  Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

A plaintiff "opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02-cv-4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  A plaintiff "must establish the court's jurisdiction with respect to each claim asserted." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

To meet this burden, a plaintiff must plead facts sufficient for a prima facie showing of jurisdiction. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  The Court construes all the plaintiff's allegations as true and resolves all doubts in its favor.  *Casville Invs., Ltd. v. Kates*, No. 12-cv-6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)). "However, [a plaintiff] may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14-cv-3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (internal quotation marks and citation omitted).

The Court may rely on additional materials outside the pleading when ruling on 12(b)(2) motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91-cv-3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008) (citations omitted).

**B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

In considering a Rule 12(b)(6) motion, a district court may consider the complaint, exhibits thereto, and any document incorporated by reference or integral to it. *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (quoting *In re Thelen LLP*,

736 F.3d 213, 219 (2d Cir. 2013)).  Courts most commonly recognize documents as incorporated by reference or integral where "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint."  *Glob. Network Communs., Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006).  Accordingly, when considering a motion to dismiss breach of contract claims, courts will look "at the contract itself, which by definition is integral to the complaint." *Sobel v. Major Energy Servs., LLC*, No. 19-cv-8290 (GBD), 2020 U.S. Dist. LEXIS 137832, at *13 (S.D.N.Y. July 31, 2020).  "If a document integral to the complaint contradicts that complaint, the document controls, and the court need not accept the complaint's allegations as true."  *Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-cv-432 (JSR), 2021 U.S. Dist. LEXIS 121150, at *9 (S.D.N.Y. June 29, 2021) (citations omitted).

## III.   DISCUSSION

When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether the Complaint states a claim.  *See Darby Trading*, 568 F.Supp.2d at 335 (citation omitted); *Yellow Page Solutions*, 2001 WL 1468168, at *3 (citation omitted).  Accordingly, the Court first addresses whether it has personal jurisdiction over Auddino before turning to Auddino's 12(b)(6) arguments.

### A.  **The Court has Personal Jurisdiction Over Auddino**

A federal court may lawfully exercise personal jurisdiction over a defendant only where personal jurisdiction comports with both constitutional due process and the appropriate state long-arm statute.  *See Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012).  Auddino moves to dismiss for lack of personal jurisdiction on the basis that neither requirement is satisfied here.

New York's long-arm statute, CPLR § 302(a), does not reach as far as is constitutionally permissible. *Id.* at 61. Under the doctrine of constitutional avoidance, the Court will therefore first consider the statutory basis for personal jurisdiction before addressing whether jurisdiction comports with the constitutional limits of due process. *See id.* Ultimately, the Court concludes that personal jurisdiction is proper under both New York's long arm statute and due process.

    1. *Personal Jurisdiction is Proper under New York's Long Arm Statute*

Koutsoudakis alleges personal jurisdiction is proper under CPLR § 302(a)(1).[3] Doc. 24 at 9. CPLR § 302(a)(1) provides that a court may obtain personal jurisdiction over a non-domiciliary "who in person or through an agent . . . transacts any business within the state," so long as the cause of action "aris[es] from" that "transact[ion]." Koutsoudakis argues that Auddino's "purposeful" execution of the Agreement and his continuous and consistent communications with Koutsoudakis's attorneys and administrative staff constitutes "transacting business" within the meaning of § 302(a)(1). Doc. 24 at 9–11. Moreover, it argues that Auddino "engaged in substantial conversations with numerous attorneys at [the] firm" concerning case strategies for the Shareholder Litigation and draft pleadings. *Id.* at 11. Auddino, however, argues that personal jurisdiction is not proper because he did not transact business in New York within the meaning of CPLR § 302(a)(1). Doc. 20 at 14. Specifically, Auddino argues Koutsoudakis has only alleged that Auddino is an *agent* of Osman and J. Streicher, and that he signed the Agreement on their behalf, so no personal jurisdiction exists over him as an agent. *Id.*

Under § 302(a)(1), a court examines "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)

---

[3] Koutsoudakis concedes that Auddino is not subject to specific personal jurisdiction under §§ 302(a)(2)–(4), nor general jurisdiction. *See* Doc. 24 at 9–12.

(citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 2006)).  A defendant need not ever enter New York for personal jurisdiction to be proper, "so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988) (citations omitted).  Additionally, courts in this district have found a defendant transacts business within the meaning of § 302(a)(1) where he sends communications into New York related to a "transaction that had its center of gravity inside New York, into which a defendant projected himself," and the litigation arises from that transaction. *Three Five Compounds, Inc. v. Scram Techs., Inc.*, 11-cv-1616 (RJH), 2011 WL 5838697, at *4 (S.D.N.Y. Nov. 21, 2011) (citation omitted). As the New York Court of Appeals held in a case with analogous facts, where an individual seeks out a New York attorney, establishes an attorney-client relationship, and communicates with the attorney about the representation, personal jurisdiction is established over that individual for a suit related to nonpayment of legal fees, even if he never enters New York. *Fischbarg v. Doucet*, 880 N.E.2d 22, 27 (N.Y. 2007).

Here, Auddino retained Koutsoudakis on behalf of Osman and J. Streicher. Compl. ¶ 7; Doc. 25 at 4.  He then communicated with its attorneys and administrative staff throughout the Shareholder Litigation, including with respect to billing and invoices, scheduling meetings with Osman and J. Streicher, and case strategies.  Doc. 24 at 10–11. Because these contacts constitute purposeful transaction of business in New York, and the instant action arises from Koutsoudakis' representation in the Shareholder Litigation, the Court holds that it has personal jurisdiction over Auddino. *See Three Five Compounds, Inc.*, 2011 WL 5838697, at *4; *Fischbarg*, 880 N.E.2d at 27.

 2. *Personal Jurisdiction Comports with Due Process*

Auddino also argues in passing that personal jurisdiction here would violate due process because "[i]t would be entirely unreasonable and unfair to require [him], a Pennsylvania resident, to defend himself in the foreign state of New York in a lawsuit

involving" the Agreement when he was not a party to it, had no involvement with it, did not negotiate it, had no duty to perform it, received "absolutely no benefit" from it, and "never had occasion or purposeful reason to appear or present in New York in connection with" it.  Doc. 20 at 16.

The Second Circuit has observed that, although personal jurisdiction could *theoretically* be permitted under CPLR § 302(a)(1) but prohibited under due process, the court "would expect such cases to be rare."  *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013) ("It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, . . . the assertion of specific jurisdiction would somehow . . . offend traditional notions of fair play and substantial justice." (internal citations and quotation marks omitted)).  Indeed, the Second Circuit noted it could identify no such cases in the circuit.  *Id.*

This will not be the "rare" case to find to the contrary.  *See id.*  Auddino has failed to satisfy his burden to demonstrate a compelling case that jurisdiction would be unreasonable here.  *See BHC Interim Funding, LP*, 2003 WL 21467544, at *1. Consequently, this Court's exercise of personal jurisdiction over Auddino is both statutorily and constitutionally lawful.

### 3. *Koutsoudakis' Argument as to Rule 19 is Unavailing*

Koutsoudakis also argues that the Court has personal jurisdiction over Auddino because he is an indispensable party under Rule 19 as a party to the Agreement.  Doc. 24 at 12.  Auddino denies that he either a party to the contract or an indispensable party.  *See* Doc 25 at 8–9.  Koutsoudakis is correct that parties to a contract may be indispensable parties within the meaning of Rule 19.  *See Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000).  But a party's indispensability cannot confer personal jurisdiction.  *Sabol v. Bayer Healthcare Pharm.*, 439 F. Supp. 3d 131, 145 n.9 (S.D.N.Y. 2020) (rejecting argument similar to Koutsoudakis' because Rule 19 "is, by its own

words, limited to persons 'subject to service of process,' and does not circumvent or overcome the requirement that the Court have personal jurisdiction over the defendants"). Rather, where an indispensable party cannot be joined for lack of personal jurisdiction, the court must determine whether to dismiss the case in its entirety. *See, e.g., Broker Genius, Inc. v. Seat Scouts LLC*, No. 17-cv-8627 (SHS), 2019 U.S. Dist. LEXIS 145964, at *2 (S.D.N.Y. Aug. 27, 2019) (dismissing action for inability to exercise personal jurisdiction over an indispensable party). Thus, Koutsoudakis' argument that Auddino's alleged indispensability creates personal jurisdiction over him is without merit.

    **B.  Koutsoudakis Fails to State Any Claim Against Auddino**

As a preliminary matter, the Court notes that, although Koutsoudakis did not attach the Agreement to its complaint, it did submit the Agreement in support of its opposition to the motion to dismiss. Because all of Koutsoudakis' claims are contract claims predicated on the Agreement, the Court will look "at the contract itself, which by definition is integral to the complaint." *Sobel*, 2020 U.S. Dist. LEXIS 137832, at *13; *see also Glob. Network Communs., Inc.*, 458 F.3d at 157 (2d Cir. 2006) (holding that a court may consider on a motion to dismiss "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint"). And, where the Agreement contradicts allegations in the complaint, "the [Agreement] controls, and the court need not accept the complaint's allegations as true." *Trustpilot Damages LLC*, 2021 U.S. Dist. LEXIS 121150, at *9.

    *1.  The Breach of Contract Claim is Dismissed Because Koutsoudakis Has Not Sufficiently Pled that Auddino was Bound by the Agreement*

Koutsoudakis alleges Auddino's failure to pay $107,531.66 constitutes a material breach of the Agreement, to which it alleges he was a party. Compl. ¶¶ 1, 24–25. To state a breach of contract claim, a plaintiff must plead, *inter alia*, that an enforceable

contract existed between the parties, which requires pleading that defendant was a party to the contract. *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, No. 15-cv-3371 (SAS), 2015 U.S. Dist. LEXIS 94896, at *6 (S.D.N.Y. July 21, 2015). "[A]n agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Maran Coal Corp. v. Societe Generale de Surveillance S.A.*, 92-cv-8728 (RPP), 1993 U.S. Dist. LEXIS 7123, at *14 (S.D.N.Y. May 27, 1993) (citation omitted).

Here, the Court finds that the Complaint contains no allegations indicating that Auddino entered into the contract as a co-principal with Osman and J. Streicher or otherwise superadded his liability. Indeed, the Complaint describes Auddino as an attorney who represented Osman and J. Streicher and—*as their "representative"*—signed the Agreement with Koutsoudakis. Compl. ¶ 7. Moreover, the Agreement itself is explicit that "[t]he firm agrees to represent you solely," and defines "you" as "Bulent Osman, on behalf of yourself in your individual capacity and as authorized member or representative of J. Streicher, LLC." Doc. 23-2 at 1. The sole signature line was for J. Streicher, to be signed by Bulent Osman, individually and as an authorized member of J. Streicher. *Id.* at 3. And, although Auddino signed that line, he specifically wrote out "Joseph Auddino on behalf of Bulent Osman and J. Streicher, LLC." *Id.* Consequently, although Koutsoudakis also alleges that the Agreement provided that Koutsoudakis would provide legal services to "Defendants" (including Auddino) such that "Defendants" therefore breached the Agreement through their nonpayment and are "jointly and severally" liable for the unpaid legal fees (Compl. ¶ 1), the terms of the Agreement itself belie such a finding. Further, because the Agreement controls, the Court need not accept Koutsoudakis' characterizations of the Agreement in the complaint as true. *See Trustpilot Damages LLC.*, 2021 U.S. Dist. LEXIS 121150, at *9. Accordingly, the Court finds that Auddino is not, by the terms of the Agreement, a party to the contract.

A breach of contract claim may not therefore lie against him absent additional "clear and explicit evidence" that Auddino intended to superadd his personal liability. *See Maran Coal Corp*, 1993 U.S. Dist. LEXIS 7123, at *14; *accord TransformaCon, Inc*, 2015 U.S. Dist. LEXIS 94896, at *6.  In its opposition to the motion to dismiss, Koutsoudakis alleges that such evidence exists because Auddino acted outside of his scope of agency and therefore is liable to a breach of contract claim.  Doc. 24 at 13–15. But no such allegations are pled in the complaint and are therefore insufficient to resist a motion to dismiss.[4]  *See Ritchie v. N. Leasing Sys., Inc.*, 14. F. Supp. 3d 229, 241 (S.D.N.Y. 2014) ("It is longstanding precedent in [the Second] [C]ircuit that parties cannot amend their pleadings through issues raised solely in their briefs." (citation omitted)).  Consequently, Koutsoudakis fails to plead that Auddino was bound by the Agreement, and its breach of contract claim must be dismissed.  *See Maran Coal Corp.*, 1993 U.S. Dist. LEXIS 7123 at *14.

    2. *Because Koutsoudakis Has Not Pled that Auddino was a Party to the Agreement or Otherwise Liable to Koutsoudakis for its Representation in the Shareholder Litigation, the Remainder of Koutsoudakis' Claims Must Also Be Dismissed*

All of Koutsoudakis' claims are premised on the allegation that it represented *all* Defendants—including Auddino—in the Shareholder Litigation, and *all* Defendants are therefore jointly and severally liable for Koutsoudakis' unpaid legal fees.  Because the Court has already held, however, that Auddino was not a party to the Agreement, and Koutsoudakis has failed to allege facts that would superadd his personal liability on any other grounds, the Court must dismiss the rest of Koutsoudakis' claims.

---

[4] To survive a motion to dismiss pursuant to Rule 12(b)(6), the *complaint* must "state a claim to relief that is plausible on its face," and the Court is therefore limited to searching the pleadings for allegations sufficient to state a breach of contract claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This is unlike the Court's analysis under Rule 12(b)(2), in which it *may* consider allegations outside the pleadings for purposes of establishing personal jurisdiction. *Darby Trading Inc.*, 568 F. Supp. 2d at 334; *John Hancock Prop. & Cas. Ins. Co.*, 1992 WL 26765, at *1 n.1.  Accordingly, the Court considered Koutsoudakis' allegations as to Auddino's involvement and communications with the Shareholder Litigation for purposes of its personal jurisdiction analysis, but those allegations are not properly before the Court to state a breach of contract or other claim.

a. *Breach of Good Faith and Fair Dealing*

New York law implies a covenant of good faith and fair dealing in every contract "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted). Because Koutsoudakis has failed to plead that Auddino was a party to the Agreement, there is no contract in which to imply a covenant of good faith and fair dealing against Auddino, and the claim for breach of such implied covenant must also be dismissed. *See Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) ("Because the duties imposed by the implied covenant of good faith and fair dealing arise as a result of the formation of a contractual relationship between the parties, a claim for breach of the implied covenant of good faith and fair dealing must be dismissed when there is no valid and enforceable contract between the parties." (citation omitted)).

b. *Account Stated*

Under New York law, a plaintiff can establish a claim for account stated by showing: "(1) an account was presented; (2) it was accepted as correct; and (3) the debtor promised to pay the amount stated." *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 570 (S.D.N.Y. 2013) (citations omitted). Auddino disputes that the third element can be satisfied because he did not promise to pay Koutsoudakis in his personal capacity. Doc. 20 at 18–19. The Court agrees. Because it has already held that Koutsoudakis failed to allege facts sufficient to plead that Auddino was a party to the Agreement, the Court cannot find that Auddino promised to pay the debt arising from the Agreement or Koutsoudakis' representation of Osman and J. Streicher in the Shareholder Litigation more generally. *Zim Am. Integrated Shipping Servs. Co., LLC v. Sportswear Grp., LLC*, 550 F. Supp. 3d 57, 67 (S.D.N.Y. 2021) (dismissing breach of contract, account stated, and quasi-contract

claims for the same reason:  that "there is no well pled allegation of any indebtedness of Defendant to Plaintiff").  The account stated claim is therefore dismissed.

        *c.   Quantum Meruit and Unjust Enrichment*

        "Under New York law, quantum meruit and unjust enrichment claims are analyzed together as a single quasi-contract claim."  *Nat'l Util. Serv., Inc. v. Tiffany & Co.*, No 07-cv-3345 (RJS), 2009 WL 755292, at *9 (S.D.N.Y. Mar. 20, 2009) (citing *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)); *see also Snyder v. Bronfman*, 921 N.E.2d 567, 569 (N.Y. 2009) ("Unjust enrichment and quantum meruit are, in this context, essentially identical claims, and both are claims under a contract implied . . . in law to pay reasonable compensation." (alteration in original) (internal quotation marks omitted)).  To recover in quantum meruit, a plaintiff must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 175 (citation omitted).  Moreover, a plaintiff "must allege that [it] expected compensation from the [defendant], not from a third party."  *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 523 (S.D.N.Y. 2017) (citation omitted).  As Koutsoudakis has failed to plead any reasonable expectation of compensation *from Auddino*, rather than from Osman and J. Streicher, the quasi-contract claims for quantum meruit and unjust enrichment are also dismissed.

## IV.   LEAVE TO AMEND

        While the Court has dismissed all claims against Auddino, it will grant Koutsoudakis leave to amend the Complaint.  Courts are instructed to "freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (citation

omitted); *see also Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015) (reaffirming the "liberal spirit" of Rule 15 and counseling strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims).

Here, because this is the Court's first opportunity to highlight the precise defects of Koutsoudakis' pleading, and it is not yet apparent that another opportunity to amend would be futile, the Court will permit them to replead the dismissed claims.

## V.    CONCLUSION

For the reasons set forth above, Auddino's motion to dismiss is GRANTED.  If Koutsoudakis wishes to file an amended complaint, it must do so by August 29, 2023.  By the same date, the Court also directs Koutsoudakis to submit an update as to the status of the proceedings against Osman and J. Streicher.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 18.

It is SO ORDERED.

Dated:    August 14, 2023
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.